The next case for argument is 22-133, Schwendimann v. Neenah. We're ready when you are, sirs. Thank you, Your Honor. Before I get started, I have a small administrative matter that I just need to raise. So it was inadvertent mistake, but when we submitted the appendices, there were apparently some pages in the middle of the appendices that were misnumbered. They were off by one. So as a result, there are several pages in there as filed that are misnumbered, and about 20 pages that were cited that were not included in the joint appendix. So what the parties would like to do is, with your permission, file a corrected joint appendix pursuant to Rule 25i. Yeah, and you've consulted COCOA? Yes, yes, Your Honor. OK, fine, thank you. Thank you for bringing that to our attention. You're welcome, Your Honor. Thank you. Since we're doing a little housekeeping, well, I'll let you start first, and then I'll do the housekeeping. Oh, I'm happy to. Thank you, Your Honor. Please, the court. Your Honors, there's no justification for using Kronzer as a lead reference. Before Jody, people were already making dark t-shirts by creating a white canvas on the shirt. Can I do my housekeeping? Just back up a little, and I'm going to let you start all over again. Just cover it up. She has a housekeeping. Yeah. OK, thank you. Do you agree that this appeal involves all the claims discussed, and the two later appeals are going to be argued? Yes, yes, it does. This appeal will cover all of the claims. The next appeal will cover some of the claims, and then there's a separate for the last set of patents. If this case, say for example, this case had come last month, and the other two cases were coming in succeeding months, and we affirmed in this case, we would be holding invalid all the patents and claims that are issued in the other two cases. Yes, yes, Your Honor. It would moot those two appeals. Yes. Yes, thank you very much. Yes, that's right. Just give me one second, Your Honor. There's only two cases. We have two spinning going in different ways, so no. Oh, yeah, right. Yes. No, you're right. Yes, you're absolutely right. OK, we're going to restart the clock again. I apologize. I just want to double check the numbers. Take a deep breath, and then you're going to start again when it runs there in the last minute. I'm sorry. No, no, no. I'm going to see what it was. I should have memorized it. I forgot that one of them is wrong. So may it please the Court. Your Honor, there's no justification for using Kronzer as a lead reference. Before Jodi, people were making dark t-shirts by creating a white canvas on the shirt and then putting an image on that white canvas. What Jodi's patent did was improve the way the image, the canvas, and the shirt interact. Why would someone who was trying to improve the interactions with a canvas start with a patent-like Kronzer, which does not even have a canvas? OK, so I've got a few questions about this lead argument theory that you type a lead argument. The first is a waiver question, because what we could find in the briefing was that you did make the argument that a person skilled in the art would not have looked for the Kronzer at all. Is that not a different argument that said that the argument you're making now and the argument you made in your briefs that they shouldn't have used Kronzer as the lead, not that they shouldn't have considered Kronzer at all? And if I'm wrong about that, show me where you made the argument that they shouldn't have used Kronzer as the lead. Your Honor, I believe we made the argument in the reply brief, but that argument I don't believe has ever been waived, because the point we've made to the Patent Office repeatedly, and I'll try to find the citations here, the point we always made to the Patent Office, and in fact, it's why during the argument the board even asked Nina's counsel the question, was we've always said from the beginning, why would you start with Kronzer when Oyez is the one that discloses a white layer? And so it makes sense to start with Oyez, but when they did, the board repeatedly said that keeps the patents patentable. There is no justification for starting on a patent where the issue is, how do you deal with that white layer that provides a background for the image? To start with a patent that doesn't even have a white layer, has no canvas, and then say, let's borrow a single ingredient, not even the entire layer, but borrow a single ingredient from Oyez and put it in there. And the reason is, the only reason anybody would do it that way would be to use Jody's invention as a roadmap, because otherwise, what would naturally happen is that you made this argument to the board. Yes, Your Honor. We did. And in fact, that's why they asked that question. Well, it was, in Judge Ankenbrand's discussion with you, a 564 and 562-34 in this case was all in context of whether or not you're using the claims as a roadmap, correct? Whether we were using the claims as a roadmap. Yeah, that was the argument. That was, yes, that was part of the argument, yes. And there isn't any case law in a utility patent setting to say, well, the process requires the selection of a lead reference and what a lead reference has to have in it. This isn't a design patent case. It isn't, but your own case law, the WBIP case that we cite and the Yetta case that we cite actually make this point that when this issue is raised where we say specifically, hey, why would you select, out of a sea of prior art, why would you select Kronzer as the lead? That issue was squarely in front of the Patent Office and Neenah was challenged with it, even at the oral argument. And there's never been an answer to that question. And the reason is because Kronzer doesn't even have a white layer. So when they did try, and they did try eight different times with a patent that does have a white layer, which is OAS, the Patent Office said repeatedly, that doesn't render the claims unpatentable. Didn't the challenge patent cite Kronzer as prior art? Yes, Kronzer was cited in all of the patents as prior art. When they originally went through the Patent Office and even for the reissue patent, all the Kronzer patents were cited as prior art. So one looks at the prior art and they see OAS and they see, oh, yes, there's a possibility of using a white layer. But the way in which OAS uses his with a cross-linked polymer creates a kind of stiffness. And so one says, well, I'm also looking at Kronzer maybe wouldn't want to, on an ordinary scale, be motivated to improve Kronzer. And especially when Kronzer says, well, you can have pigments and Kronzer isn't limited to printing on white or black or on any particular surface. So the rationale, as I believe from the board, unless I'm mistaken, was that Kronzer itself has got information here about the field and while it's still in the art, would have been motivated to improve Kronzer. So let me unpack that in a couple of different ways, Your Honor. First, when the board or Nina says Kronzer can be used with any t-shirt, that misses the mark because all they're saying is it's a light fabric transfer, an iron-on, and you can put it on dark fabric. You just may not be able to see the design. That's the problem. And then, but in terms of when Kronzer And using a white layer was a way to deal with the problem. Yep, and using the white layer was the way to do it. OAS chose to deal with it in one way, right? Yeah. Which in the way in which they did it was with the cross-linked polymer, right? But the effect of that cross-linked polymer is critical here, which is everybody agrees what that did was it caused a white layer, in other words, that canvas that was stiff. It didn't interact, or it didn't mix and melt with the other layers. The effect of that discovery on the patentee's part when she discovered that was it allowed the t-shirt to move with the shirt. And so there is no discussion in NINA or the board to suggest why someone would be looking at those pieces and saying, you know what the problem is? It is, it's not soft enough, and I'm gonna try to solve for that. All it says, all they were saying is, I wanna add a white layer, and the only piece of prior art, and the only approach in the prior art was that stiff cross-linked polymer. And so the only solution that's there is the cross-linked polymer white layer being put on to Kronzer. Are you, you agree that Kronzer is analogous art? Kronzer is analogous art, your honor, but it's. So I'm getting, I mean, I read WPI, VIP, and I've read Yeda, and I'm not, I mean, you're holding those cases are out as if we've got this legal test here about picking lead arguments. I'm aware of analogous art, I'm aware in the chemistry field, we sometimes deal with lead compounds, but this seems like an odd argument to me. And it, respectfully, your honor, I don't think, it's not an odd argument. Let me phrase it slightly differently. The reason we're bringing that out, and the reason it was brought out in WPIP and in Yeda is when you have a sea of prior art, and it's a very specific problem that we're dealing with here, which is, hey, how do you put a white layer into a shirt and have it be able to move with the shirt? The prior art hasn't addressed this problem at all. And all you have is prior art that's out there, which is already out there, which is you can do some things for light T-shirts. No canvas in there, no background. And the claims require something where you have a layer that is actually providing the background for the image. So are you saying there was, you win because there was no lead reference that you could have ever used? I'm saying you couldn't use- Even though you have, I mean, I thought the test was, is this analogous art? Can we look at it? Are you saying that if you don't have a lead reference, you can't find obviousness? No, I'm not saying that, but what I am saying in this context, and I think it's what the cases are saying, WPIB kind of says it, there's always a sea of prior art that could all be analogous art. But there are times when there's a reason to look at why are you picking the lead reference? And that's a question that's been raised here. And so when you have- What are the consequences? So the consequences, if you don't have a reason to pick the lead reference, except because of the claims as a roadmap, that's improper. And that's where I'm going, is the only reason they picked Kronzer, they don't have- Sorry. I think, if I'm not mistaken, the rationale they said the things about Kronzer was that it does permit the insertion of the pigment in the layer, right? Actually, what it says is it can use pigments, but there's no examples in Kronzer for pigment. No, I understand that, but just the use of the pigment and also the fact that Kronzer doesn't limit itself to printing on white. And so a lot of ordinary skill in the art is free to consider how to improve Kronzer. The law, doesn't the law say if one ordinary skill in the art looks at a reference and says, hmm, this is very helpful in the art, i.e. having a white layer, always, so they know that. They look at the other art and they say, hmm, could I improve with that knowledge? Could I improve other prior art? Wouldn't one ordinary skill in the art be motivated to do that? Yes, that's part of the law, KSR, but you'd still need a little reason to get into Kronzer. And the reasons for getting into Kronzer is Kronzer says, hmm, you can have pigments in layers and you can try it on a black shirt. So then the question is, is there substantial evidence to support the board's conclusion, actual conclusion that there were these two hooks, if not others, in Kronzer that said, this is why we're going to try to improve Kronzer in the light of what we learned from Walsh? And so. So what? So the first part I think I've addressed, but just to be clear, the main reason no one on that side has ever suggested why they started with Kronzer and because Kronzer really doesn't solve this problem. When they did start with something that does solve this problem, which is a unique problem of dealing with having a canvas, the white layer, the only solution they had out there was the hard plastic, the cross-linked polymer. And there's absolutely no, no evidence. Artisan knew that Oz, although he had genius solved the printing on the dark fabric, it created this stiffness, right? And that's a disadvantage. So a lot of skill in the art would be inclined, would she not, to want to find a solution to the stiffness. But there was no solution out there other than, so Kronzer teaches a very specific solution, which is stiffness, which is this cross-linked reaction. And the patent office already found that if you tried to just take that solution and put it into Oyez, that doesn't render the claims unpatentable. So the question becomes, why are they able to just pick the pigment out? And you even said there's pigment already disclosed in Kronzer, but why are they able to pick pigment out and then start to experiment with all of Kronzer? And there's a lot of evidence, including their own, that says that that would be unpredictable. Your case law says it's unpredictable, Art. That gets us into the merits of the combination. And that's part of it is, they don't have substantial evidence. For me, sir, when I look at, to me, your lead argument based on the lead reference is, it's combined, it's mixed up with your arguments on the merits as to why there's no motivation to combine what original expectation of success. Yeah, yes. So if I, in my mind, just to tell you fairly how I dealt with your situation one, seeing your lead argument is sort of odd because there is no clear statement in the two cases you cite for the rule of law you'd like, because those cases are referring to proceedings before the patent office and examination. And the body of law that's built on this comes from examiner's rejections, challenge to the board, the board then entering an alternative, you know, A over B. And then the board said, no, it would be over A. And the question was, is that a new ground for rejection? No. And Judge Rich even said in one case, it's frivolous to try to make this distinction. So that's where all that case law comes from. My point is, once I've read and looked at the question of motivation to combine with expectation of success, if I'm going to affirm the board on all of those data points on substantial evidence, then I look at your lead reference argument and it doesn't seem to have any bite because the reasons why Kronzer was important here was because it opened the door to being improved by a white layer. And the only thing I'd push back on, Your Honor, and respectfully is, it's the only reason everybody knows to now look at Kronzer and say, hey, it can be used for this, is looking at Jody's patent. Otherwise, there is no reason to start with- But Jody didn't come up with the idea of white. But Jody did come up with the idea of coming up with a new white layer that would work in a t-shirt and that had never been done before. And the only way people had done a white layer before that was that very specific reaction. And so one skill in the art, there is no basis for, if someone all of a sudden had these in front of them to say, hey, let me take the white layer, but no, not the entire white layer, that's the prior art solution. I'll just take the pigment out and start experimenting. There is no basis in the record for saying why one of skill would do that with any reasonable expectation of success. Okay. You're well into your week. Okay. You still have some time at the end. Thank you. May it please the court. Just to start with the lead reference, it is an argument that wasn't raised below. Do you also agree just to kind of level set with the, it's the same question that Judge Covinger asked the other side, that if we were to affirm on this appeal and render the other two appeals, they're gonna get argued moot? Yes. So it is definitely a new argument that wasn't raised below. You know, the lead reference, and I think they admit that in a footnote in their paper they say that they didn't make this specific argument. On which? I'm sorry? What did you say? Oh, in their reply brief at six, the gray book at footnote two, they said they didn't make this specific argument about the lead reference. They made a different argument, which is Kronza should be used at all. And Rana correctly pointed out that that argument's more akin to a non-analogous argument, which the board found. The board found Kronza analogous. And they haven't challenged that appeal. And they haven't challenged that. And that's appendix 166. So the way we look at this, and the cases they cite. But there was a discussion, at least on the oral argument, in front of Judge Angenbrand, leading that discussion, as to whether or not are you using, was your side using the claims as a roadmap. And that was pointing to the fact of, why are you, why are you, why are you, you already have motives. It makes no sense to go to Kronza. So that's. That's correct. If it was raised at all, right, it wasn't raised in their papers. WBIP was never raised in their papers. And if it was raised at all, it was raised at oral argument. And the federal circuit in the Dell case said that that was, that's not permitted. Not allowed to raise a new argument, especially for an IPR proceeding, during the oral argument. It has to be based on the arguments and the evidence presented during the IPR process, the papers and the testimony. So even if it is addressed, there's definitely that exchange. But that would be inappropriate for preserving it for appeal. And then to criticize the board, to say where's their discussion about this lead reference, to us, right, it's a little unusual because it wasn't raised. And if, when we look at the issues they say they did raise, the board did address those issues. The at all argument. They addressed it at appendix 174 through 175. So from our perspective, it's either those two arguments are the same and the board did address it and we are under a substantial evidence standard. Or the new lead reference argument is truly new, wasn't preserved, and therefore weakened. The- Well what about the lead argument? I'm sorry? What about the lead argument, lead reference argument? Yeah, we don't believe it's required, Your Honor. And to be honest, the board's findings, just in going through its obvious analysis, makes it abundantly clear. Did you trace back the history of how WBIP and the others together got to where they got to the dicta in those cases? Yeah, the WBIP is a case where the federal circuit was faced with a jury verdict. And they didn't, a jury verdict- This notion that you might have to defend picking one reference as opposed to another for a lead analysis, that the notion, do you agree with me that that comes from older cases from primarily CCPA and others that were dealing with the saying of references obvious A over B as opposed to B over A in the patent office? That's my error of understanding, Your Honor. But even in, I think, the Mutek case, this court recently said that it's not about labels. It's really about what does the combined references teach? And in that instance, when we're talking about what they teach, the labels are less relevant because here, everyone agrees, the parties agree that both Kronzer and Oez teach each and every limitation of the claims. And so the labels are less important, but the most important focus and obviousness analysis is what does the combined teachings of the two references? And so since here, that is the case, and the board went through that analysis. And they did find, I mean, this is a situation where Kronzer discloses every limitation other than the pigment. So, I mean, it's a natural, as the lead references go, it's a natural because it has everything that the claim requires but the white pigment, and it itself invites one of Browning's skill in the art to add pigments. And Oez comes in and says, well, here's our improvement on image transfer sheets. You add a white pigment in, and that'll increase the brilliance of the image transfer. And so, you know, I think what their argument really boils down to, or their complaint is that Kronzer doesn't address the problem that the patent suit addresses. And that's just, the law doesn't require that. I mean, I think this court just recently in Inri Guttavi in May of 2023, stated that there is simply no requirement that the board rely on references that recognize the problem identified in the asserted patent. And that's at 2023 WL347, 7285. It's not in our brief just because it was issued after the briefing was done. But the concept is in the law in Inri Pitti back in Federal Circuit 92. And the board's decision itself addresses this at appendix 174, when it says Kronzer may not solve much less acknowledge the specific problem of dark image transfer. So whether it's waived or not, we believe this argument is incorrect as a matter of law, the argument they're making. And we think it's incorrect because the board's findings amply demonstrate exactly why Kronzer would be a good reference. Even addressing your point, the patent owner cited 18 Kronzer patents. He's well known in this industry. So he's a logical starting point for any image transfer. Moving on to their, the other argument they addressed, why would you pick out just the white pigment? And I think the short answer is, that's what O.S. teaches. O.S. expressly teaches that if you wanna make an improvement to an image transfer sheet that's similar in structure, which the board found that Kronzer's and O.S.'s were similar, you add this white pigment, it gives additional brilliance, especially on dark textiles, especially in dark fabric. So it's saying, here's an improvement to an image transfer sheet and the way you do it is the white pigment. And so the answer is the express teachings of O.S. gives you an improvement, an improvement that Kronzer invites into his image transfer sheet. And so to us, when we look at this, we have expressed teachings. This is not an issue of hindsight. When the teachings and the motivation come from the expressed teachings of the prior art, that's not consideration. Hindsight is when you don't have the motivation. Here we have expressed teachings explaining why one warning skill in the art would be inclined to combine the two. And when the expressed teachings are simply we know that white is useful,  So you raise a great point, Your Honor. I mean, the real thing here is. And then the points that Kronzner says, well, you can have pigments and there's no limitation to what you're printing on. Right, and the board addressed this in saying that. Are there any other data points in Kronzner? You say expressed teachings. So other than teaching that you can have a pigment and the fact that where Kronzner isn't restricting itself to what color material it prints on. Any other teachings in Kronzner? I just think it's, I think those are the main teachings in Kronzner. And I do think that. Well, you really need to find some teachings in Kronzner to help you to undermine the allegation that there's road mapping here. Okay, the other teaching would be that has a common goal with OS. They share the common goal of increasing the quality of the image transfer. So if one of our new skill in the area is sitting with two references, they have similar structures and they both have the goal of transferring image quality. And one says, oh, by the way, I have an additional improvement. I have a way of improving image quality. Something that Kronzner is already interested in trying to do, right? Then you put in what that improvement is, add white pigment, right? And the cross-linking. OS already got thicker in terms of the black, black, black, brown problem. Right, it's really dark image, dark pixel. Putting on a t-shirt that felt like it was boring. But cross-linking, and this is, I think, something that the board made very clear in its findings. Cross-linking and white pigment have nothing to do with each other. White pigment plays no role in cross-linking the white layer. So I think this is a situation where it's very clear and I can go through this, where the board goes through its analysis, that the cross-linking is independent of the white pigment. The teachings, that what one learning skill in the art is saying is the white pigment that gives you the whiteness. That's what's giving you the contrast. That's what's giving you the improvement and brilliance of the image transfer. The cross-linking is just, that's a reaction that in OS's embodiments, they believe was a part of their invention. But it doesn't change what it teaches one learning skill in the art. What it teaches one learning skill in the art, and the board made this incredibly clear, is that it's the white pigment. And the board goes through this. They said that there's no, Pat Oner didn't point them to anything that said that white pigment was required for cross-linking in Kronzer. The board did their own review, I believe it's at appendix 175, where they said we looked at OS itself. We have four board opinions, right? What? We have four board opinions. Well, I think we've been working off the 475 one, so that's the appendix, the numbers that I've been reciting. So, in 175, the board says that we do our independent review of OS, and we don't find anything where it says white pigment equals that. Both experts agree. Their expert agrees. The white pigment is independent of the cross-linking. So, yes, there's a difference between OS and Schweinemann's patents. There's cross-linking, but it's a difference that's irrelevant to the teaching that the white pigment is the solution to the issue of trying to increase the image quality when you're transferring an image onto a dark fabric. And to the extent there's time or questions, I'm more than happy to answer them. Thank you. Thank you. We'll restore three minutes of rebuttal. Your Honor, let me address two or three points that he made. One is, OS does not just teach the white pigment. What OS teaches, and the record is very clear, it's literally undisputed, they teach a very specific reaction for using it, which is a cross-linking reaction. And so, that is what is taught to one skilled in the art. There is absolutely nothing in the record that says why a person of skill in the art would just take the white pigment out of a white fabric and start to experiment when the only solution out there for providing a white background, as the claims require, is this very specific reaction. There is no white canvas, white layer in Kronzer. The only solution out there for a white layer, for a white background, is that cross-linked reaction. And everybody knew in the prior art what the white was for. Well. Because in the olden days, you took the T-shirt and then you took the white and you put it down, you stuck it on, and then you put the picture on the white. Yep, and so you know what the white is for, and you know that if you tried to incorporate it into a one-piece T-shirt thing, that you'd have it as a hard piece of plastic. What no one solved in the prior art was how to make that softer. And what they're suggesting is, I would just take the white pigment out, which everybody knew white pigment existed, and had never done, and all of a sudden just start experimenting with the formulas in Kronzer. And that simply, even if you read Kronzer, you can see the number of failures, and there's not a single experiment in Kronzer where they even use a pigment. And it's just failures galore. And it's in our brief. But the main point is, if you had that solution, there's nothing in this record. Their expert, our expert, no one has ever explained why the only solution you have off the shelf is that specific cross-linked reaction, yet you take one ingredient out and then you start to experiment with the formulas in Kronzer. And that's why there's not substantial evidence for the obviousness finding that the board came up with for all these patents. Thank you. Thank you. We thank both sides. The case is submitted.